## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| JOHN ROMIG, JR., *on behalf of himself and all others similarly situated,* | ) ) ) | No. 2:14-mn-00001-DCN |
| | | No. 2:14-cv-00433-DCN |
| Plaintiff, | ) ) | |
| | ) | |
| vs. | ) ) | **ORDER** |
| PELLA CORPORATION and PELLA OF CENTRAL NEW YORK, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on a motion to dismiss brought by defendant Pella Corporation ("Pella Corp."). For the reasons set forth below, the court grants in part Pella's motion and dismisses all of plaintiff's causes of action except for his breach of express warranty claim to the extent he relies on Pella's failure to repair or replace windows under the limited warranty.

## I.  BACKGROUND

Plaintiff John Romig, Jr. ("Romig") purchased Pella Architect and Designer Series windows during the construction of his home in Cazenovia, NY. Am. Compl. ¶ 15. After noticing leaks and rot in his home due to the windows, Romig filed a warranty claim with Pella. Id. In 2004, Pella agreed to replace Romig's windows after he signed a release and waiver absolving Pella of all liability for its defective windows. Id. Romig signed the release and Pella removed the windows from his home and installed new windows in 2006. Id. The replacement windows have also damaged Romig's home. Id. Romig purchased "additional Pella products" in 2008 and 2009. Id. Romig filed a second warranty claim with Pella and, on March 26, 2012, Pella responded that the

1

deterioration was the "result of water management issues related to the installation and other construction design issues." Id.

Romig alleges that the windows suffer from a defect in the "design of the sill extrusion and sill nailing fin attachment as well as a defect in the design of allowing a gap between the jamb gasket and the sill gasket." Id. ¶ 33. Romig alleges that due to these design defects, water leaks through the windows and can become trapped between the aluminum and the operable wood frame, causing damage to the windows and "other property within the home." Id. Romig further alleges that Pella knew of the defect when it shipped the windows. Id. ¶ 10.

On July 18, 2013, Romig filed a class action complaint against Pella Corp. and Pella Windows and Doors, Inc. in the United States District Court for the Northern District of New York, asserting jurisdiction based on diversity of citizenship and pursuant to the Class Action Fairness Act.[1] He amended his complaint on September 30, 2013. The amended complaint brings the following ten claims against Pella Corp. and Pella of Central New York ("Pella NY") (collectively, "Pella"): (1) unfair and deceptive trade practices in violation of New York General Business Law § 349; (2) negligence; (3) breach of the implied warranty of merchantability; (4) breach of the implied warranty of fitness for a particular purpose; (5) breach of express warranty; (6) fraudulent misrepresentation; (7) fraudulent concealment; (8) unjust enrichment; (9) violation of the

---

[1] Although Romig contends that there is complete diversity, Compl. ¶ 13, that is not the case. Romig is a New York citizen, id., and Pella NY is a New York corporation with its principal place of business in Liverpool, New York. Id. ¶ 17. However, Romig also alleges jurisdiction based on the Class Action Fairness Act, and his complaint properly alleges jurisdiction under 28 U.S.C. § 1332(d)(2).

Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, et seq.; and (10) declaratory relief.

Pella Corp. filed the instant motion to dismiss on October 21, 2013. Romig opposed the motion on December 23, 2013, and Pella Corp. replied on January 17, 2014. Pella NY answered Romig's amended complaint and filed a cross claim against Pella Corp. on December 20, 2013. On February 9, 2014, the United States Judicial Panel on Multidistrict Litigation transferred Romig's case to this court as part of the consolidated multidistrict litigation. Pella Corp.'s motion to dismiss has been fully briefed and is ripe for the court's review.

## II.  STANDARDS

### A.      Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting

Twombly, 550 U.S. at 570).  "Facts pled that are 'merely consistent with' liability are not

sufficient."  A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011)

(quoting Iqbal, 556 U.S. at 678).

###     B.      Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so

it is governed by state substantive law and federal procedural law.  Shady Grove

Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1448 (2010) (citing Hanna

v. Plumer, 380 U.S. 460, 465 (1965)).  "In multidistrict litigation, the law of the

transferee circuit governs questions of federal law."  In re KBR, Inc., 736 F. Supp. 2d

954, 957 (D. Md. 2010) modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925

F. Supp. 2d 752 (D. Md. 2013) vacated and remanded on other grounds, 744 F.3d 326

(4th Cir. 2014); see also In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907,

911 (8th Cir. 2004); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean

Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987); cf. Bradley v.

United States, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to

questions of federal law in a case transferred from the Fifth Circuit).  Therefore, this

court must apply New York substantive law and Fourth Circuit procedural law.

## III.  DISCUSSION

Pella Corp. asserts that all of Romig's claims should be dismissed.  The court first

determines whether the release and waiver signed by Romig precludes his claims and

whether the applicable statutes of limitations are tolled by equitable tolling or class action

tolling.  The court will then consider Pella Corp.'s arguments about each claim individually.

### A.    Release and Waiver

Pella Corp. first argues that all of Romig's claims except his express warranty claim are barred by the release and waiver that he signed in 2004 in exchange for Pella replacing his windows.  Romig responds that the release is unenforceable because:  (1) it was procured by fraud; (2) Romig did not sign it knowingly and voluntarily; (3) it is unconscionable; and (4) it is ambiguous.[2]

On July 28, 2004, Pella NY agreed to replace numerous windows and three doors in Romig's home.  Def.'s Mot. Ex. 1 at 4; see also Am. Compl. ¶ 15.   In exchange for these replacement windows, Romig agreed to "release and discharge Pella Corporation, Pella of Central New York, Inc., and all their officers and employees from any and all claims . . . arising out of, or relating to, the manufacture, sale and installation" of the replacement windows and doors.  Def.'s Mot. Ex. 1 at 4.  Romig further agreed that the replacement products would be "covered only by any remaining balance of that warranty" that covered his original windows and doors.  Id.

Romig argues that the release is unconscionable because Pella provided no consideration in exchange for Romig's total release of claims and because Pella explicitly refused "to honor its own contractual obligations without the release."  Pl.'s Resp. 7.

---

[2] Romig also makes the cursory argument that Pella Corp. cannot rely on the release because it is extrinsic evidence that was not attached to his amended complaint.  However, for purposes of a Rule 12(b)(6) motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  Romig's amended complaint makes repeated references to the release.  Am. Compl. ¶¶ 15, 55, 122, 128, 136, and 141.  Because the amended complaint repeatedly refers to the release, it is appropriate for the court to consider the release in this motion to dismiss.

Romig contends that these two factors "demonstrate[] the gross disparity of bargaining power and lack of meaningful choice presented to Romig" in signing the release.  Id.

Under New York law, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release."  Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V., 17 N.Y.3d 269, 276 (N.Y. 2011) (internal citations omitted).  However, releases may be set aside for any of the traditional reasons for setting aside written instruments, such as duress, illegality, and fraud.  Id.  In New York, a contract is unconscionable if it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforciable [sic] according to its literal terms."  Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988) (internal quotations omitted).  As a result, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made – i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  Id.  However, "procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa."  Simar Holding Corp. v. GSC, 87 A.D.3d 688, 690, 928 N.Y.S.2d 592, 595 (N.Y. App. Div. 2011) (citation omitted).  "Whether a contract or a clause thereof is unconscionable or not is for the court to decide."  State v. Wolowitz, 96 A.D.2d 47, 68 (N.Y. App. Div. 1983).  "Where there is doubt . . . as to whether a contract is fraught with elements of unconscionability, there must be a hearing where the parties have an opportunity to present evidence with regard to the circumstances of the signing of the contract, and the

disputed terms' setting, purpose and effect." Simar Holding Corp., 928 N.Y.S.2d at 595 (citation omitted).

It is not possible for the court to determine at the motion to dismiss stage whether or not the release is unconscionable. There is no evidence on the record regarding the circumstances surrounding the signing the release, Romig's experience and education, or whether Romig lacked a meaningful choice. Because the court is unable to determine the validity of the release, it does not bar Romig's claims, at least at this stage of litigation.

**B.    Tolling**

Pella Corp. also argues that all of Romig's claims are barred by their respective statutes of limitations. While the specific statute of limitations for each claim will be discussed below, the parties argue about the application of two tolling doctrines to all of the statutes of limitations: equitable estoppel and class action tolling.

**1.    Equitable Estoppel**

Romig argues that the statutes of limitations were tolled by the doctrine of equitable estoppel. Pl.'s Resp. 17.

Equitable estoppel "preclude[s] a defendant from using the statute of limitations as a defense where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." Putter v. N. Shore Univ. Hosp., 858 N.E.2d 1140, 1142 (N.Y. 2006) (citations omitted). A plaintiff must identify not only the underlying wrongful act, but also another distinct act that merits equitable tolling. Corsello v. Verizon N.Y., Inc., 944 N.E.2d 1177 (N.Y. 2012) (rejecting equitable estoppel where plaintiffs did not allege an act of deception separate from the ones for which they were suing); St. John's Univ. v. Bolton, 757 F. Supp. 2d 144, 187 (E.D.N.Y. 2010) ("[E]quitable estoppel does not apply

where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying cause of action."). Were it otherwise, "the mere assertion of an underlying fraudulent act would always trigger equitable estoppel and render the discovery accrual rule for fraud actions superfluous." Kaufman v. Cohen, 760 N.Y.S.2d 157, 167 (N.Y. App. Div. 2003).

Romig alleges that Pella "continued its practice of concealing the defective nature of the windows while attempting to absolve itself of liability for the defects." Pl.'s Resp. 17 (emphasis added). Pella contends that this is not a sufficient "separate act," but rather the continuation of the fraudulent concealment. Pella Corp.'s Reply 17. Indeed, all of Pella's alleged wrongdoing relates to the purported fraudulent concealment of the defects in the windows – the exact same acts which form the basis of the underlying cause of action. Therefore, equitable tolling does not toll the statutes of limitations for Romig's claims.

### 2.    Class Action Tolling

Romig also contends that the filing of a previous class action in federal court in the Northern District of Illinois, Saltzman v. Pella, tolled the statutes of limitation for his claims. Pl.'s Resp. 14.

The doctrine of class action tolling was first announced in American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974). In American Pipe, the Supreme Court held that an applicable statute of limitations is tolled during the pendency of a class action for putative class members who intervene after the denial of class certification – at least where certification is denied for failure to meet the numerosity requirement of Federal Rule of Civil Procedure 23. Id. at 552-53; see also id. at 554 ("[T]he commencement of a

class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.").  The Supreme Court has extended the American Pipe rule to purported members of the class who later file individual suits rather than intervene.  Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983).

American Pipe tolling, however, applies only to a "subsequently filed federal question action . . .  during the pendency of a federal class action."  Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999) (citing American Pipe, 414 U.S. at 552-53) (emphasis added); see also Vincent v. Money Store, 915 F. Supp. 2d 553, 560-61 (S.D.N.Y. 2013) ("The American Pipe case concerned the tolling of claims under a federal statute, the Sherman Act.  It did not purport to announce a rule that would apply to state law claims. . . .  The plaintiffs cannot rely on American Pipe to toll the statutes of limitations for their state law claims. The plaintiffs must look to any state analogue to American Pipe tolling rather than American Pipe itself.").

Therefore, the court must determine whether New York law would toll the statutes of limitations during the pendency of the Saltzman federal class action.  As an initial matter, it is unclear whether New York courts have adopted class action tolling at all.  Compare Cullen v. Margiotta, 811 F.2d 698, 719 (2d Cir. 1987) ("New York courts have . . . long embraced the principles of American Pipe."), with Kaufman v. Sirius XM Radio, Inc., 980 N.Y.S.2d 276, *5 (N.Y. Sup. Ct. 2013) (noting that although the New York Appellate Division has "indicated a willingness to adopt American Pipe," it remains an "unsettled area of law").  However, this case deals with what has been termed "cross-jurisdictional" class action tolling – that is, tolling during the pendency of a class action

in another court, in this case a federal court in Illinois.  See Wade,182 F.3d at 287 (defining cross-jurisdictional class action tolling).  Romig cites no New York authority addressing cross-jurisdictional tolling.  A federal court in New York has recently held that New York has not addressed cross-jurisdictional tolling.  Soward v. Deutsche Bank AG, 814 F. Supp. 2d 272, 280 (S.D.N.Y. 2011).

The Fourth Circuit has been reluctant to read cross-jurisdictional tolling into state law where it is otherwise silent.  Wade, 182 F.3d 281, 287 (4th Cir. 1999) (applying Virginia law); see also Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025 (9th Cir. 2008) (declining to import a cross-jurisdictional tolling rule into California law, which otherwise does not have such a rule, and finding that "[t]he rule of American Pipe – which allows tolling within the federal court system in federal question class actions – does not mandate cross-jurisdictional tolling as a matter of state procedure"); Soward, 814 F. Supp. 2d at 281 (holding that New York would not apply cross-jurisdictional tolling and noting that the "few states that have considered the issue have been split in both their acceptance of cross-jurisdictional tolling and the rationale for their decision").

In short, there is no indication that New York recognizes cross-jurisdictional class action tolling and the court declines to establish such a rule in the first instance.  See St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995) ("[T]he federal courts in diversity cases, whose function it is to ascertain and apply the law of a State as it exists, should not create or expand that State's public policy.").  Therefore, the statutes of limitations for Romig's claims are not tolled by class action tolling.

### C.     Count I – Unfair & Deceptive Trade Practices

Pella Corp. contends that Romig's unfair and deceptive trade practices claim must be dismissed because it is barred by the statute of limitations.  Def.'s Mot. 17.

N.Y. Gen. Bus. Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." Claims arising under § 349 are subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214(2). The statute of limitations accrues from the time when "the plaintiff was injured." Corsello, 18 N.Y.3d at 790. Such injury occurs "when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." Gaidon v. Guardian Life Ins. Co. of Am., 96 N.Y.2d 201, 210 (N.Y. 2001). "Accrual is not dependent upon any later date when discovery of the alleged deceptive practice is said to occur." Statler v. Dell, Inc., 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011)

Two New York district courts have held that when a plaintiff alleges that the defendant knowingly made misrepresentations about a defective product, the injury to the plaintiff occurs when the product was purchased. Marshall v. Hyundai Motor Am., 2014 WL 5011049, at *6 (S.D.N.Y. Sept. 30, 2014) (holding that because defective brake systems were present in cars when the plaintiffs purchased their vehicles, the statute of limitations accrued at the time of purchase); Statler, 775 F. Supp. 2d at 484 (holding that the plaintiff's § 349 claim was time-barred because "accrual occurs when Plaintiff first suffered injury" and "the allegedly faulty capacitors were present in the computers purchased at the time of delivery"). "Put another way, Plaintiffs cannot claim that their injury occurred only when [a product] failed or when they had to pay for repairs of the [product]." Marshall, 2014 WL 5011049, at *6; see also Wender v. Gilberg Agency, 716 N.Y.S.2d 40, 41-42 (N.Y. App. Div. 2000) (noting that "the date of discovery rule is not

applicable [to § 349 claims] and cannot serve to extend [the three-year] limitations period").

Applying the same reasoning here, Romig's alleged injury occurred, at the latest, in 2006 when Pella provided him with allegedly defective replacement windows.[3]  The only arguments which Romig raises in response to Pella Corp.'s motion are equitable estoppel and class action tolling, both of which the court has found do not apply to this case.  Therefore, the statute of limitations for Romig's § 349 claim accrued by at least 2006 and expired in 2009, approximately four years before he filed this suit.

As a result, the court dismisses Romig's deceptive trade practices claim as time-barred.

### D.    Count II – Negligence

Pella Corp. next argues that Romig's negligence claim must fail because it is time-barred.  Def.'s Mot. 19.

The parties agree that negligence claims are subject to a three-year statute of limitations.  N.Y. C.P.L.R. § 214(4).  "New York's three-year statute of limitations for negligence actions begins to run when the injury first occurs."  Iacobelli Const., Inc. v. Cnty. of Monroe, 32 F.3d 19, 27 (2d Cir. 1994).  "Indeed, 'the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury.'"  Nigerian Nat. Petroleum Corp. v. Citibank, N.A., 1999 WL 558141, at *4 (S.D.N.Y. July 30, 1999)

---

[3] While Romig pleads that he purchased "additional Pella products" in 2008 and 2009, he never alleges that those products were defective or caused any injury.  See Am. Compl. ¶ 15.  Moreover, while all of Romig's claims are based on Architect and Designer Series windows, he does not plead that the "products" purchased in 2008 and 2009 were even windows, much less Architect and Designer Series windows.

(quoting <u>Evans v. Visual Tech., Inc.</u>, 953 F. Supp. 453, 456 (N.D.N.Y. 1997)) (emphasis in original).

As discussed above, Romig's injury arose by 2006 at the very latest, when the replacement windows were installed. Again, Romig's only response involves the application of tolling doctrines that the court has rejected. Therefore, the court dismisses Romig's negligence claim as barred by the statute of limitations.

### E.     Counts III & IV – Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose

Pella Corp. asserts that Romig's breach of implied warranty claims should be dismissed because they are time-barred. Def.'s Mot. 20.

Under New York law, breach of warranty claims are subject to a four-year statute of limitations. N.Y. U.C.C. § 2-725(1). The statute of limitations accrues upon delivery unless the warranty "explicitly extends to future performance of the goods . . . ." <u>Id.</u> § 2-725(2). Implied warranties, by their very nature, cannot explicitly extend to future performance. <u>Chopra v. Pella Window Corp.</u>, 2 A.D.3d 1087, 1088 (N.Y. 2003) ("Since the implied warranties of merchantability and fitness do not extend to future performance, they do not invoke the discovery provision of UCC 2-725(2)."); <u>Port Auth. of N.Y. & N.J. v. Allied Corp.</u>, 914 F. Supp. 960, 962 (S.D.N.Y. 1995) ("By its very nature an implied warranty cannot be explicit, and thus cannot be saved by the § 2-725(2) exception for explicit warranties as to future performance.").

Because Romig's windows were delivered in 2006 at the latest, his implied warranty claims expired in 2010, approximately three years before he filed the current action. Therefore, the court dismisses Romig's implied warranty claims because they are barred by the statute of limitations.

13

**F.    Count V – Breach of Express Warranty Claim**

Pella Corp. next argues that Romig's breach of express warranty claim should be dismissed because it is barred by the statute of limitations.  Def.'s Mot. 23.

Under N.Y. U.C.C. Law § 2-725(1), breach of warranty claims "must be commenced within four years after the cause of action has accrued."  The cause of action accrues when the breach occurs and a breach occurs "when tender of delivery is made, except that where a warranty <u>explicitly extends to future performance</u> of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  <u>Id.</u> § 2-725(2) (emphasis added).  "A warranty of future performance is one that guarantees that the product will work for a specified period of time."  <u>St. Patrick's Home for Aged & Infirm v. Laticrete Int'l, Inc.</u>, 696 N.Y.S.2d 117 (N.Y. App. Div. 1999) (citation omitted).  Warranties to repair or replace the product in the event that it fails to perform, without any promise of performance, do not constitute warranties of future performance.  <u>Id.</u> (citation omitted).

Romig alleges two separate breaches of express warranties.  First, he alleges that Pella breached various warranties by shipping defective windows.  <u>See, e.g.</u>, Am. Compl. ¶ 107.  Romig also alleges that Pella has failed to sufficiently repair or replace the defective windows according to the terms of the limited warranty.  <u>See</u> Am. Compl. ¶ 110.

The court will first consider alleged breaches of warranty which relate to the quality of the windows.  Because delivery of the replacement windows occurred in 2006 at the latest, Romig's claim that Pella breached express warranties by shipping windows that were neither appropriate for their intended purpose nor free from defects is barred by the statute of limitations unless the express warranties explicitly extend to future

14

performance.  However, none of the express warranties alleged by Romig explicitly extend to future performance or guarantee that the windows will work for a specified period of time.

In his response, Romig argues that several statements by defendants warranted that his windows would perform in the future:  "Pella's most energy-efficient wood and windows and doors"; "Proven resistance to water penetration"; "Years of smooth opening and closings"; "[Our] priority has and always been [sic] the enduring quality that is built into every product we sell"; "[The] Pella quality, performance and beauty that you enjoy today are yours for years to come"; and "years of comfortable ownership."  Pl.'s Resp. 23.  Only two of these statements even arguably extend to future performance:  "Years of smooth openings and closings" and "years of comfortable ownership."  The first statement cannot be the basis for Romig's express warranty claim, however, because he never alleges that the windows failed to open and close smoothly.  The second statement, that the windows would provide "years of comfortable ownership," is a "generalized statement[] of salesmanship" rather than a "description[] of particular characteristics of the [product]," and is therefore puffery that cannot create an express warranty.  Anderson v. Bungee Int'l Mfg. Corp., 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999) (holding that statements that product was of "Premium Quality" and "Made in the USA" were mere puffery); see also Indep. Order of Foresters v. Donaldson, Lufkin & Jenrette Inc., 919 F. Supp. 149, 152 (S.D.N.Y. 1996) (holding that "opinions, puffery and other similar language [are] not actionable as a breach of warranty").  Because Romig has not alleged any express warranties extending to future performance of the goods, his express

warranty claim regarding the windows being free from defects expired four years after the replacement windows were delivered.

Romig also alleges that Pella has not "sufficiently repaired or replaced" the defective windows in their homes.  Am. Compl. ¶ 110.  The limited warranty that ships with the windows states that:

> If a defect in materials or workmanship of your Pella product not covered by the glass warranty is brought to our attention during the first ten years from the date of sale, Pella Corporation will, at its option:  1) Repair the product . . . ; 2) Provide replacement part(s) or product(s) . . . ; or 3) If we determine that repair or replacement is not practicable, we may elect to refund the original purchase price.

Def.'s Mot. Ex. 2; Am. Compl. ¶ 36 (quoting substantially similar language).  Romig alleges that he made a warranty claim in March 2012 and Pella failed to repair or replace his windows.  Am. Compl. ¶ 15.  It is unclear when Romig bought the windows, and, therefore, when the ten-year limited warranty expired.  However, since Pella's denial of Romig's 2012 warranty claim is potentially covered by the limited warranty, the court will not dismiss Romig's breach of express warranty claim to the extent it relies on Pella's failure to repair or replace pursuant to the terms of the limited warranty.

Therefore, the court dismisses Romig's breach of express warranty cause of action as time-barred to the extent he alleges Pella breached express warranties by shipping defective windows.  However, the court denies Pella Corp.'s motion to the extent Romig alleges that Pella failed to repair or replace windows according to the terms of the limited warranty.

### G.     Counts VI and VII – Fraudulent Misrepresentation and Fraudulent Concealment

Pella Corp. next contends that Romig's fraudulent misrepresentation and fraudulent concealment claims must be dismissed because they are time-barred.  Def.'s Mot. 24.

In New York, the statute of limitations for fraud claims is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."  N.Y. C.P.L.R. § 213(8).  "The two-year period does not commence from the date that plaintiff has positive knowledge of the fraud, but from the date that plaintiff becomes aware of enough operative facts so that, with reasonable diligence, [he or] she could have discovered the fraud."  Stride Rite Children's Grp., Inc. v. Siegel, 269 A.D.2d 875, 876 (N.Y. App. Div. 2000) (internal quotation marks and citations omitted).  "The test as to when fraud should with reasonable diligence have been discovered is an objective one."  Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 265 (S.D.N.Y. 2008).  "A complaint should be dismissed where it conclusively appears that the plaintiff has knowledge of facts which should have caused her to inquire and discover the alleged fraud."  Id. (internal quotation marks and citation omitted).  Moreover, "[t]he plaintiff bears the burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action."  Id. (citation omitted); see Hillman v. City of New York, 263 A.D.2d 529, 529 (N.Y. App. Div. 1999) (placing burden on the plaintiff, "who seeks the benefit of the exception").

Here, Romig does not allege any act or omission as the basis of his fraud claims after he received his replacement windows in 2006.  Because the replacement windows

were installed more than six years before he filed suit, the only way Romig's fraud claims are viable is if he has met his burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action. He has not met his burden here. The amended complaint lacks any detail, such as when he discovered the alleged defect in the replacement windows, which would allow the court to determine that Romig could not have discovered the fraud before the two-year period prior to the commencement of the action. Therefore, the court dismisses Romig's fraud claims. See Grasso v. Grasso, 45 A.D.3d 1022, 1023 (N.Y. App. Div. 2007) (affirming dismissal of fraud claim where suit was filed more than six years after fraud and plaintiff failed to establish that he was entitled to the benefit of the discovery exception).

## H.     Count VIII – Unjust Enrichment

Pella Corp. argues that Romig's unjust enrichment is barred by the statute of limitations. Def.'s Mot. 19-20.

Under New York law, the statute of limitations for unjust enrichment claims is six years. N.Y. C.P.L.R. § 213(1); Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 262 (S.D.N.Y. 2006). A claim for unjust enrichment accrues upon commission of the wrongful act giving rise to the duty of restitution. Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp., 596 N.Y.S.2d 435, 437 (N.Y. App. Div. 1993).

Romig contends that Pella was unjustly enriched when he purchased the allegedly defective windows. Am. Compl. ¶¶ 146-47. Although the time of purchase is not specified in the amended complaint, it is obviously at some point before the release was signed in 2004. Therefore, Romig's unjust enrichment claim had run by 2010. Even if Pella Corp. was somehow unjustly enriched in 2006, when the replacement windows

were installed, the statute of limitations would still have run by 2012, a year before Romig filed this suit.

Therefore, the court dismisses Romig's unjust enrichment claim as time-barred.

**I.      Count IX – Violation of the Magnuson-Moss Act**

In a footnote to his response in opposition to Pella Corp.'s motion to dismiss, Romig states that he "withdraws his claim under the Magnuson Moss Warranty Act." Pl.'s Resp. 18 n.14.  Therefore, the court dismisses the claim.

**J.      Count X – Declaratory Relief**

Finally, Pella Corp. argues that Romig's claim for declaratory relief must be dismissed because the Declaratory Judgment Act does not create an independent cause of action.  Def.'s Mot. 30.

The Declaratory Judgment Act states that

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C.A. § 2201.  The Declaratory Judgment Act is procedural only, Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)), and "does not create an independent cause of action." Chevron Corp. v. Naranjo, 667 F.3d 232, 244 (2d Cir. 2012).  Because the court dismisses all of Romig's other claims against Pella Corp., it also dismisses his declaratory judgment claim.

19

### IV.  CONCLUSION

Based on the foregoing, the court **GRANTS IN PART AND DENIES IN PART**

Pella Corp.'s motion **DISMISSES WITHOUT PREJUDICE** all of Romig's causes of

action against Pella Corp. except for his breach of express warranty claim to the extent he

relies on Pella's failure to repair or replace windows under the limited warranty.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

December 18, 2014
Charleston, South Carolina