IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JOHN ROMIG, JR. *on behalf of himself* *and on behalf of all others similarly* *situated*, | ) ) ) | |
| | ) | No. 2:14-mn-00001-DCN |
| Plaintiff, | ) | No. 2:14-mn-00433-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| PELLA CORPORATION *and* PELLA OF CENTRAL NEW YORK, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendant Pella Corporation's ("Pella")[1] motion

for partial summary judgment.  For the reasons set forth below, the court grants Pella's

partial motion for summary judgment and dismisses plaintiff John Romig, Jr.'s

("Romig") breach of express warranty claim to the extent it relates to the windows

installed in Romig's home in 1999.

## I.   BACKGROUND

Romig purchased Pella Architect and Designer Series windows during the

construction of his home in Cazenovia, New York.  Am. Compl. ¶ 15.  Romig first

purchased Pella windows, through his contractor Edward L. Chase ("Chase"), in

conjunction with the construction of the "Dutch Barn" section of his home in 1998 and

---

[1] This motion was filed by Pella Corporation.  Pella of Central New York, Inc. is an additional defendant in this case but is an independently owned corporation and a former distributor of Pella brand products.  Pella of Central New York is separately represented in this case and has filed a cross-claim against Pella Corporation.  ECF No. 42, Answer to Am. Compl. ¶¶ 23–24.

1999.  Def.'s Mot. Ex. 1, Romig Depo. 37:20–37:1, 42:24–43:25; Def.'s Mot. Ex. 2, 1/22/98 Order Form.  Romig decided to purchase Pella windows because he and his wife "were very interested in a period look" and "the look of the window" was "very important."  Romig Depo. at 44:7–25.  Romig visited a Pella showroom at Pella of Central New York and received all of the Pella materials, including the limited warranty at the center of this dispute.  Id. at 48:20–25.  Pursuant to the limited warranty, Pella agreed to repair or replace defective windows reported "during the first ten years from the date of sale."  Def.'s Mot. Ex. 4.  Romig purchased a second set of Pella windows, which came with the same limited warranty, in conjunction with the construction of the "English Barn" section of his home in 2002.  Id. at 14–25, 75:2–25; Def.'s Mot. Ex. 3, 5/29/02 Order Form.

Romig noticed problems with the "Dutch Barn" windows shortly after their installation and with the "English Barn" windows in 2003.  Romig Depo. 70:2–72:25, 78:15–25.  After noticing leaks and rot being caused by the windows, Romig filed a warranty claim with Pella.  Am. Compl. ¶ 15; see also Romig Depo. at 79:18–20, 82:7–17.  Pella inspected the home in 2003 and concluded that the problems were being caused by construction-related defects.  Id. at 86: 2–87:3.  Nevertheless, in 2004, Pella agreed to replace Romig's windows after he signed a Release and Waiver absolving Pella of all liability relating to the windows, except claims brought under the limited warranty.  Id. at 89:18–21; Def.'s Mot. Ex. 4.  Notably, however, the parties agreed that Romig would not receive a new limited warranty, but instead, the replacement windows would be covered "only by any remaining balance of" the limited warranty on the original windows.  Def.'s Mot. Ex. 4.

2

In 2006, Romig notified Pella that he continued to have problems with his

windows.  Def.'s Mot. Ex. 6.  Greg Gerdes ("Gerdes"), Pella's representative, visited the

home to inspect the windows.  Id.  Following Gerdes's inspection, Pella agreed to repair

36 windows by adding replacement aluminum clad sashes.  Pl.'s Resp. 4.  In 2011,

Romig contacted his insurance company about continued problems with his windows.

Romig Depo. 122:2–3, 137:22–25.  Romig's insurance company retained Kealey

Engineering LLC ("Kealey") to inspect the windows.  Id. at 121:1–25.  After inspecting

the windows in April 2011, Kealey concluded that the "windows in the Romig residence

[had] deteriorated prematurely due to manufacturing defects."  Pl.'s Resp. Ex. 4, Kealey

Site Inspection.  Romig again contacted Pella to request warranty service.  By letter dated

October 25, 2011, Pella denied warranty service.  Pl.'s Resp. Ex. 6, Warranty Claim

Denial Letter ("The repeated water damage is not the result of incorrectly manufactured

windows but rather the result of the drainage in the wall system or possibly other

installation related issues.").  Romig filed a warranty claim with Pella and, on March 26,

2012, Pella responded that the deterioration was the "result of water management issues

related to the installation and other construction design issues."  Pella's Mot. Ex. 7.

Romig alleges that the windows suffer from a series of defects affecting their

water management system, which allow water to leak through the windows and become

trapped between the aluminum and the operable wood frame, causing damage to the

windows and "other property within the home."  Am. Compl. ¶ 33 (alleging defect in the

"design of the sill extrusion and sill nailing fin attachment as well as a defect in the

design of allowing a gap between the jamb gasket and the sill gasket"); see also ECF No.

121, Class Cert. Order at 6 (outlining details of Romig's defect theory).  Romig further alleges that Pella knew of these defects when it shipped the windows.  Id. ¶ 10.

On July 18, 2013, Romig filed a class action complaint against Pella and Pella Windows and Doors, Inc. in the United States District Court for the Northern District of New York, asserting jurisdiction based on diversity of citizenship and pursuant to the Class Action Fairness Act.  He amended his complaint on September 30, 2013.  The amended complaint brings the following ten claims against Pella and Pella of Central New York:  (1) unfair and deceptive trade practices in violation of New York General Business Law § 349; (2) negligence; (3) breach of the implied warranty of merchantability; (4) breach of the implied warranty of fitness for a particular purpose; (5) breach of express warranty; (6) fraudulent misrepresentation; (7) fraudulent concealment; (8) unjust enrichment; (9) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, et seq.; and (10) declaratory relief.

Pella filed a motion to dismiss on October 21, 2013.  Romig opposed the motion on December 23, 2013, and Pella replied on January 17, 2014.  Pella of Central New York answered Romig's amended complaint and filed a cross claim against Pella on December 20, 2013.  On February 9, 2014, the United States Judicial Panel on Multidistrict Litigation transferred Romig's case to this court as part of the consolidated multidistrict litigation.  On December 18, 2014, the court granted in part and denied in part Pella's motion to dismiss without prejudice all of Romig's causes of action against Pella except for his breach of express warranty claim to the extent he relies on Pella's failure to repair or replace windows under the limited warranty.  In doing so, the court stated the following.

> Romig alleges that he made a warranty claim in March 2012 and Pella
> failed to repair or replace his windows.  Am. Compl. ¶ 15.  It is unclear
> when Romig bought the windows, and, therefore, when the ten-year
> limited warranty expired.  However, since Pella's denial of Romig's 2012
> warranty claim is potentially covered by the limited warranty, the court
> will not dismiss Romig's breach of express warranty claim to the extent it
> relies on Pella's failure to repair or replace pursuant to the terms of the
> limited warranty.

ECF No. 65, MTD Order 16.  Therefore, Romig's only remaining claim is a breach of

express warranty for Pella's failure to replace Romig's windows after he notified Pella of

the defect in 2011.[2]

In the order on the motion to dismiss, the court also addressed the "Release and

Waiver" Romig signed in 2004 in exchange for Pella replacing his windows (the

"Release").  In the motion to dismiss briefing, Romig argued that the Release was

unenforceable because it was procured by fraud, Romig did not sign it knowingly and

voluntarily, it is unconscionable, and it is ambiguous.  The court held that it was

impossible to determine whether or not the Release was unconscionable at the motion to

dismiss stage.  The court noted that there was no evidence on the record regarding the

circumstances surrounding the signing of the Release, Romig's experience and education,

or whether Romig lacked a meaningful choice.  Therefore, because the court was unable

to determine the validity of the Release, the court did not bar Romig's claims.

Pella filed the present motion for partial summary judgment on October 27, 2015.

Romig filed a response in opposition on November 20, 2015, and Pella replied on

December 4, 2015.  Pella contends that discovery has answered some of the questions

---

[2] Although the court's order stated that Romig made the warranty claim in 2012,
he actually made the claim in 2011.  Pl.'s Resp. Ex. 6.

lingering after the motion to dismiss, allowing the court to limit the scope of Romig's

remaining claims.  Specifically, Pella asserts that it is entitled to summary judgment

regarding the windows Romig's contractor, Chase, purchased in 1998 and 1999, leaving

only express warranty claims relating to the windows Chase purchased in 2002.  The

motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARDS

Summary judgment shall be granted "if the movant shows that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of

the suit under the governing law will properly preclude the entry of summary judgment."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will

not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  Id.  "[A]t the summary

judgment stage the judge's function is not himself to weigh the evidence and determine

the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at

249.  The court should view the evidence in the light most favorable to the non-moving

party and draw all justifiable inferences in its favor.  Id. at 255.

This case is predicated on diversity jurisdiction and was filed in federal court, so

it is governed by state substantive law and federal procedural law.  Shady Grove

Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 416 (2010) (citing Hanna v.

Plumer, 380 U.S. 460, 465 (1965)).  "In multidistrict litigation, the law of the transferee

circuit governs questions of federal law."  In re KBR, Inc., 736 F. Supp. 2d 954, 957 (D.

Md. 2010) modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925 F. Supp. 2d

752 (D. Md. 2013) <u>vacated and remanded on other grounds</u>, 744 F.3d 326 (4th Cir.

2014); <u>see also</u> <u>In re Gen. Am. Life Ins. Co. Sales Practices Litig.</u>, 391 F.3d 907, 911 (8th

Cir. 2004); <u>Menowitz v. Brown</u>, 991 F.2d 36, 40 (2d Cir. 1993); <u>In re Korean Air Lines</u>

<u>Disaster of Sept. 1, 1983</u>, 829 F.2d 1171, 1176 (D.C. Cir. 1987); <u>cf.</u> <u>Bradley v. United</u>

<u>States</u>, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to questions of

federal law in a case transferred from the Fifth Circuit).  Therefore, this court must apply

New York substantive law and Fourth Circuit procedural law.

### III.   DISCUSSION

In its partial motion for summary judgment, Pella argues that Romig's only viable

express warranty claim relates to the windows purchased in 2002 because the windows

purchased in 1998 and 1999 are outside of the limited warranty period, as agreed upon in

the Release.  Def.'s Mot. 4–5.  Romig argues that:  (1) the Release is rendered

unenforceable by fraud; (2) the durational limited imposed by the limited warranty and

the Release are unconscionable;[3] and (4) the 2004 replacement sashes carried a new 10-

year limited warranty.  Pl.'s  Resp. 8–15.

On July 28, 2004, Pella agreed, "as a gesture of 'Customer Goodwill,'" to provide

replacement products in exchange for Romig signing the Release.  Def.'s Mot. Ex. 4.

Romig signed the following release:

---

[3] Romig also argues that he can bring a breach of warranty claim for certain 1998
and 1999 windows that Pella did not replace in 2004, but nevertheless attempted to repair
in 2006.  Pl.'s Resp. 12.  However, this argument relies on Romig's assertion that the
durational limits in the limited warranty are unconscionable.  <u>Id.</u>  Thus, the court does not
address this argument separately and considers it resolved by the discussion of
unconscionability.

> In exchange for the above-listed Contribution, I hereby release and discharge Pella Corporation, Pella of Central New York, Inc., and all their officers and employees from any and all claims (with the sole exception of any remaining warranty as noted below) arising out of, or relating to, the manufacture, sale, and installation of the Covered Products listed above. I acknowledge that this Release and Waiver is for all claims, whether past, present, or future, whether known or unknown, or whether arising in tort, contract, or any other theory. I understand that the Contribution listed above will be provided to the Customer once the Sales Branch receives a fully executed release. I understand that the Covered Products were covered by a limited warranty. <u>Any replacement product provided as part of the Contribution will be covered only by any remaining balance of that warranty provided on the Covered Product.</u>

<u>Id.</u> (emphasis added). Romig testified that he reviewed and read the Release before he signed it. Romig Depo. 95: 2–8. Romig also testified that he read the Release language, but never consulted an attorney, explaining that, as a business owner who has "done business for a long, long time," it "never dawned on [him] to lawyer up because [he] was dealing with another business person who [he] thought, at the time, was [] trying to make good." <u>Id.</u> at 97:18–100:5.

### A.    Fraud

Romig argues that "[e]ach element of fraud is satisfied such that the Release [] should be set aside." Pl.'s Resp. 9. A release may be set aside under New York law if induced by fraud. <u>Barrett v. United States</u>, 660 F. Supp. 1291, 1309 (S.D.N.Y. 1987) (citing <u>Barrett v. United States</u>, 622 F. Supp. 574, 584 (S.D.N.Y. 1985)); <u>Goldsmith v. Nat'l Container Corp.</u>, 40 N.E.2d 242 (N.Y. Ct. App. 1942). To establish fraud, a plaintiff must prove that:

> 1) there was a misrepresentation or active and wrongful concealment of a material fact; 2) the representation was in fact false and was known to be false at the time it was made or the concealment was intentional; 3) the misrepresentation was made for the purpose of inducing plaintiff to rely on it or the concealment was done to mislead the plaintiff; 4) plaintiff did,

8

> in fact, rely on the misrepresentation or would have acted differently had she known of the concealment; and 5) plaintiff was caused injury as a proximate result of the misrepresentation or concealment.

Id. (citing Barrett, 622 F.Supp. at 584; Mallis v. Banker's Trust Co., 615 F.2d 68, 81 (2d Cir. 1980)).

Romig argues that Pella withheld material facts by "failing to disclose . . . the defective nature of the replacement [w]indows provided under the terms of the Release," and therefore, his assent to the Release was procured by fraud. Pl.'s Resp. 9. Romig further argues that "discovery has and will continue to show" that Pella was aware of the defect as early as 1997, but did not disclose the defective nature of the replacement windows to Romig "prior to or at the time he signed the Release because it knew that doing so would cause Romig to refuse its offer." Id. Romig contends that he relied on Pella's misrepresentation in signing the Release, causing him damage. Id.

The court finds it unnecessary to determine whether the Release should be rendered void by fraud because the original warranty period—unaltered by the Release—has expired. Even if Romig could demonstrate each element of fraud sufficient to set aside the Release, the express warranty claim relating to the windows purchased in 1998 and 1999 must fail because Romig did not file suit until 2013, four years after the breach of express warranty claim expired. The effect of Romig's fraud claim is to set aside the Release, leaving the original limited warranty. The court cannot carry Romig's fraud analysis further under the auspices of the breach of warranty claim to determine what would have happened but for the fraud. To do so would allow Romig to use his breach of warranty claim as a vehicle for recovering damages that arise from the fraud itself. This would ignore New York's statute of limitations for fraud claims, which—as discussed in

9

the court's December 18, 2014, order on Pella's motion to dismiss—bars Romig's claims

for fraudulent misrepresentation and fraudulent concealment.  MTD Order 17.

Therefore, the court finds that it is irrelevant whether the Release and Waiver was

procured by fraud.

### B.    Unconscionablity

Romig next argues that "the durational limit on the express warranty for Romig's

1999 [w]indows is unconscionable and unenforceable."[4]  Pl.'s Resp. 11.  Pella argues that

New York law does not require a manufacturer to provide a perpetual warranty for

defects of which it is allegedly aware.  Pella's Reply 4–5.

In New York, a contract is unconscionable if it is "so grossly unreasonable or

unconscionable in the light of the mores and business practices of the time and place as to

be unenforciable [sic] according to its literal terms."  Gillman v. Chase Manhattan Bank,

N.A., 534 N.E.2d 824, 828 (N.Y. 1988) (internal quotations omitted).  As a result, "[a]

determination of unconscionability generally requires a showing that the contract was

both procedurally and substantively unconscionable when made—i.e., some showing of

an absence of meaningful choice on the part of one of the parties together with contract

terms which are unreasonably favorable to the other party."  Id.  However, "procedural

and substantive unconscionability operate on a 'sliding scale'; the more questionable the

meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and

vice versa."  Simar Holding Corp. v. GSC, 928 N.Y.S.2d 592, 595 (N.Y. App. Div. 2011)

---

[4] More specifically, Romig argues that the durational limits imposed by both the
original limited warranty terms and the Release are unconscionable.  Pl.'s Resp. 10–14.
These arguments largely merge and are both addressed in this section.

10

(citation omitted).  "Whether a contract or a clause thereof is unconscionable or not is for the court to decide."  State v. Wolowitz, 468 N.Y.S.2d 131 (N.Y. App. Div. 1983). "Where there is doubt . . . as to whether a contract is fraught with elements of unconscionability, there must be a hearing where the parties have an opportunity to present evidence with regard to the circumstances of the signing of the contract, and the disputed terms' setting, purpose and effect."  Simar Holding Corp., 928 N.Y.S.2d at 595 (citation omitted).

In support of his argument, Romig cites Szymczak v. Nissan N. Am., Inc., 2011 WL 7095432, at *5 (S.D.N.Y. Dec. 16, 2011).  In Szymczak, the plaintiffs alleged that their vehicles "contain[ed] [a] radiator defect which allow[ed] engine coolant to mix with and contaminate the transmission fluid, causing damage to the vehicle, including the transmission, valve body, radiator, and their respective component parts."  Id.  The plaintiffs alleged that the defendants were aware of the defect, failed to notify plaintiffs of the defect "during the warranty period," and "failed to repair the defect free of charge."  Id.  The plaintiffs further alleged that the limited warranty period was unconscionable and unenforceable because the defendants "knew the defect would manifest itself after the expiration of such period."  Id. at *9.

The Southern District of New York recognized a case from the Fourth Circuit in which "the Court of Appeals held that where (1) there was unequal bargaining power between the buyer and seller, (2) the seller knew of an inherent defect in its product, and (3) the buyer has no ability to detect any defect, a durational limitation on the warranty is unconscionable and therefore unenforceable."  Id. (citing Carlson v. General Motors Corp., 883 F.2d 287 (4th Cir. 1989)).  The court also recognized that "[m]uch of the

11

recent jurisprudence on this issue comes from the District of New Jersey, where courts

have permitted claims for breach of an express warranty on the theory that a

manufacturer's failure to notify a consumer that a product will fail means a durationally-

limited warranty is unconscionable." Id. The court denied the defendants' motion to

dismiss, finding that the plaintiffs' allegations were sufficient to state a claim that the

express warranty is unenforceable because the durational limitation was unconscionable.

Id. at *10.

　　　　However, Szymczak does not directly support Romig's arguments, nor does it

apply in this situation. First and foremost, this is a motion for summary judgment, not a

motion to dismiss. Therefore, the court is not only determining whether Romig's

allegations of unconscionability are sufficient, but whether the terms of the warranty are

in fact unconscionable. More importantly, in Szymczak, the plaintiffs alleged that the

defendants knew that the radiator would fail after the expiration of the warranty period.

See also Skeen v. BMW of N. Am., LLC, 2014 WL 283628, at *12 (D.N.J. Jan. 24,

2014) (denying motion to dismiss express warranty claims based on unconscionability

when the alleged defects manifested after the warranties expired); Henderson v. Volvo

Cars of N. Am., LLC, 2010 WL 2925913, at *2 (D.N.J. July 21, 2010) (denying motion

to dismiss express warranty claim based on unconscionability when the plaintiffs

discovered alleged defect outside of warranty period); Payne v. Fujifilm U.S.A., Inc.,

2007 WL 4591281, at *4 (D.N.J. Dec. 28, 2007) (same). Here, Romig alleges that the

windows failed within the first year of installation, well within the 10-year limited

warranty. Romig Depo. 69. Therefore, Szymczak is clearly distinguishable.

Further, other courts applying New York law have rejected <u>Szymczak</u> as "an outlier" and refused to apply the Fourth Circuit's ruling in <u>Carlson</u> because it is "not binding in this circuit." <u>See, e.g.</u>, <u>Chiarelli v. Nissan N. Am., Inc.</u>, 2015 WL 5686507, at *1 (E.D.N.Y. Sept. 25, 2015) (discussed below); <u>Tomassini v. FCA U.S. LLC</u>, 2015 WL 3868343, at *10 (N.D.N.Y. June 23, 2015) (dismissing a breach of express warranty claim for defects that did not manifest themselves until after the expiration of the time limitation, regardless of whether the warrantor knew of the defect at the time of sale). These recent decisions from New York's federal district courts rely on a case from the Second Circuit Court of Appeals in which the court expressly rejected the argument that a "defect discovered outside the time or mileage limits of the applicable written warranty, but latent before that time, may be the basis of a valid express warranty claim if the warrantor knew of the defect at the time of sale." <u>Abraham v. Volkswagen of Am., Inc.</u>, 795 F.2d 238, 249 (2d Cir. 1986). In support of its holding, the Second Circuit reasoned that:

> [V]irtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

<u>Id.</u> at 250.

In Chiarelli, the plaintiffs brought a class action against Nissan, alleging that

Nissan installed a defective timing chain tensioning system.  2015 WL 5686507, at *1.

On Nissan's motion to dismiss, the Eastern District of New York addressed the plaintiffs'

breach of express warranty claim.  Id. at *6–7.  The plaintiffs argued that the time

limitations contained in Nissan's express warranties were unconscionable and therefore

unenforceable, because the defendants had prior knowledge of the defect.  Id. at *6.  The

court stated that "[t]he case law is clear . . . that a defendant's knowledge of a latent

defect does not render unconscionable a limitation contained in an express warranty."  Id.

at *7 (citing Alban v. BMW of N. Am., LLC., 2010 WL 3636253, at *6–9 (D.N.J. Sept.8,

2010)).  Accordingly, the court held that the plaintiffs' allegation that Nissan's

knowledge of the defect renders the express warranties' durational limitations

unenforceable failed as a matter of law.  Id.  In so holding, the court also discussed the

plaintiffs' argument that they lacked bargaining power due to "'a vast disparity' in the

level of sophistication between the contracting parties."  Id. at *7, n.5.  After noting that

the plaintiffs failed to include such allegations in the complaint, the court indicated that,

even if they had, such "boilerplate" assertions would not survive a motion to dismiss.  Id.

(discussing Szymczak and Carlson).

Notably, the Chiarelli court did not appear to reject the idea that durational

limitations on express warranties may be rendered unconscionable and unenforceable

when the plaintiff demonstrates that the defendant knew of the defect and establishes a

disparity in bargaining power and a lack of meaningful choice.  However, the Chiarelli

court did emphasize that bare-bone allegations of such factors will not suffice.  A

defendant's mere knowledge of a latent defect does not make the limitation

14

unconscionable; the plaintiff must also show a disparity in bargaining power and a lack of meaningful choice.  See id. (discussing that bare bone allegations of lack of knowledge and unequal bargaining power are insufficient).

Thus, even if Chiarelli could be read to recognize the possibility of unconscionable durational limitations, this court finds that Romig has failed to demonstrate either the requisite lack of meaningful choice or large disparity in bargaining power.  In fact, the record demonstrates that Romig made an educated decision to purchase Pella windows after considering all of his options, discussing the options with Chase, and visiting the Pella of Central New York showroom.  Romig Depo. 44:7–45:12. Romig testified that he was aware of the warranty at the time of purchase and that he received all of the marketing and sales materials from Pella representatives when he visited Pella of Central New York.  Id. at 45:21–47:9.  Romig also testified that he discussed the other window options with Chase, but chose Pella windows because the look of the windows was very important to him.  Id. at 45:12–18.  Chase testified that he recommended Romig purchase clad windows.  Chase Depo. 75:1–23.  Importantly, Romig is a knowledgeable businessman who was very involved in the design and construction of his home.   See Def.'s Mot. Ex. 9, Kealey  Depo. 32:10–15 ("Keep in mind Mr. Romig is much more involved with this house than the average homeowner. . . . He was much more involved with the design and build of this house.").

To the extent Romig argues that he lacked any meaningful choice or bargaining power when he entered into the Release, his arguments fail for the same reasons.  Romig cannot rely on the conclusory assertion that because he is an individual and Pella is a multimillion-dollar corporation, the disparity in bargaining power is "stark."  See

Chiarelli, 2015 WL 5686507, at *7, n.5 (rejecting "boilerplate" assertions of disparity based on difference in sophistication at the motion to dismiss stage). Nor is the court convinced that Romig was deprived of any meaningful choice because he was forced to sign the Release or "incur[] tens of thousands of dollars in replacement costs." Pl.'s Resp. 11. This argument ignores the choice that every warranty holder has when their claim is rejected within the warranty period—litigation, a choice that Romig has quite obviously availed himself of here. Though Romig may not have pursued this course of action at the time, he was clearly aware that it was an option when he signed the Release. See Romig Depo. 99:22–100:5 (explaining that he did not think to "lawyer up" in connection with the Release because, as a longtime business owner, he thought Pella was "trying to make good").

Finally, Romig has failed to provide any case law, much less case law from New York, to support his argument that the durational limitation should be deemed unconscionable and unenforceable under the circumstances at hand—when Pella allegedly knew of and failed to disclose the defect but Romig discovered the defect well within the limited warranty period. The court finds it inappropriate to apply New York's doctrine of unconscionability under such circumstances, when a New York court has yet to do so. See St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995) ("[T]he federal courts in diversity cases, whose function it is to ascertain and apply the law of a State as it exists, should not create or expand that State's public policy.").

Therefore, the court finds that the durational limitation on the express warranty is not unconscionable. As such, Romig's breach of express warranty claim relating to the windows installed in 1999 must fail because the warranty has expired.

16

### C.    New Warranty

Alternatively, Romig argues, albeit very briefly, that the express warranty on the 1999 windows ran until 2014 because a new 10-year limited warranty accompanied each replacement.  Pl.'s Resp. 14.  On this theory, Romig argues that when Pella denied Romig's warranty claim in 2011, it breached the express warranty which was still in effect.  Id.  Romig does not cite any support for this argument, and the court finds it unpersuasive.  It is axiomatic that a seller creates an express warranty through some sort of affirmation or statement.[5]  N.Y. U.C.C. Law § 2-313(1)(a).  Romig does not point to any such statements made in 2004.

Therefore, the court finds that Pella did not create a new express warranty in 2004 that would extend to 2014.

---

[5] Of course, a seller can also make an express warranty through some description or sample of the goods, but even in these cases the sample or model operates as a representation that the goods shall conform to the sample or model.  N.Y. U.C.C. Law § 2-313(1).

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Pella's motion for partial

summary judgment relating to the windows installed in Romig's home in 1999.

**AND IT IS SO ORDERED**.


**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 26, 2016**
**Charleston, South Carolina**

18